May it please the Court, Julian Poon of Gibson, Dun & Crutcher on behalf of Appellant Eastwood. With the Court's permission, I'd like to reserve four minutes for rebuttal. Just watch the clock, Counsel. Yes, Your Honor. This is a straightforward case for reversal in which the District Court unfortunately jumped the gun in granting summary judgment on plaintiff's claims by erroneously construing the earn-out clause and by ignoring disputed issues of material fact, including as to what efforts it would have been quote, commercially reasonable, end quote, for the defendant buyer, Appley Titan, to undertake to quote, enable attainment of the highest earn-out threshold amounts as required by Section 10F of the Asset Purchase Agreement found at ER 402. I'd like to begin first by noting that commercially reasonable efforts require something more than pursuing one's own short-term profitability interests, and the District Court erred by holding as a matter of law here that quote, commercially reasonable efforts do not include actions that are detrimental to profit, end quote, even in the short run, and that the defendant, Titan, quote, did not have to incur losses to maximize the earn-out payment to Eastwood found at ER 26 to 27. Even assuming there were any such actual losses here, which is disputed on this record, this Court can take judicial notice that this country was built on businesses and individuals foregoing short-term profit in order to grow revenue, grow the business, and realize long-term profitability. And there is extensive evidence in this record which the District Court here disregarded based on its as a matter of law and flawed construction of commercially reasonable efforts that the District Court impermissibly disregarded under California's rather unorthodox and unique paroled evidence rule to which Judge Smith referred in a prior argument of how common and commercially reasonable it is in the non-standard auto insurance industry as in other industries. So are you suggesting that in this record I can find evidence that the industry standards would suggest that a growth mode strategy requiring short-term losses in order to obtain more premium growth in the long run is a commercially reasonable strategy? Yes, Your Honor. You can find extensive evidence of that in this record. For example, at ER 201, the Berkshire Hathaway report considered by the Court, and also at ER 111, Ms. Partridge's declaration, Ms. Partridge being the CEO of Eastwood, both discussing the concept of float in the insurance industry, the notion that in the non-standard auto insurance industry you take in premiums now, invest the money, realize returns on it before the claims have to be paid out. And in the Berkshire report, it notes how the industry commonly runs for a long time in an underwriting loss mode, which is, again, not necessarily a real loss. I would also point Your Honor's attention to admissions in deposition testimony by Titan's own executives, Mendy Riddle at ER 599-602, and Mr. David Zona at RER Reply Excessive Record 64, where both testified that, quote, it is common to, quote, run things a little hot, end quote. In other words, to incur short-term underwriting losses in order to grow the top line and grow revenue and grow DWP to written premium, which is a metric of the amount of revenue attributable or premiums attributable to insurance policies sold minus cancellations. There is also an internal document from Titan found at RER 98-100 describing that exact same concept. And our expert report and declaration from Mr. Stan Curry with 40 years' experience in the industry and as an actuary at ER 119 describes that concept as well. Those are just a handful, Your Honor. We're happy to provide the floor. No, I think I catch your argument. I just wanted to make sure, and frankly, I have noted some of those before you even suggested, and so I'll have to ask counsel about that, how you get around it on a question of fact. Absolutely, Your Honor. I would also point Your Honor's attention to the Citralite case construing commercially reasonable efforts in the beverage sales context under California law that both parties cited. Their summary judgment was denied because there were a number of measures just as here that the defendant was expected by the plaintiff to have taken that would have been harmful to short-term profit, but which would have led to long-term profitability and larger sales volumes. However, on the other hand, if we look at the fraud exception, which you've also appealed. Yes, Your Honor. It seems to me that California's fraud exception, even though we have a parole evidence rule, it's a little, well, it turns on head Idaho's idea, that the fraud exception in California applies only to an independent fact or representation, such as fraud in the procurement. But California's explained that's quite different as to the promise directly at variance with the promise of the writing. Yes, Your Honor. And it seems to me that's exactly what we're talking about here. A promise at variance with the writing itself as to fraud. I would respectfully disagree, Your Honor. Why? Just to be clear, we're distinguishing the fraud claims now. We are. From the breach of contract claims, which we were earlier discussing. Yes, we are. Defining my remarks now to the fraud claims that were also decided on summary judgment. I don't know why you're being so anxious to define it. I was only on fraud, but I'll let you do what you, I'd like to answer. Yes, Your Honor, most certainly. I would direct Your Honor's attention to the Continental Airlines case decided by the California Court of Appeal and cited by the District Court. Both parties here and I would submit respectfully that there is evidence in this record of statements that were made that are not in the nature of promise or a fraud barred by the California Supreme Court's decision in Pendergrass and its progeny. What I understand California's court to say is that a promise which is directly at variance with a promise in the writing is not something about which I should take all evidence. And that is correct, Your Honor. And it seems to me that what you're really advancing in your fraud argument are promises directly at variance with the promises in the writing. With respect, Your Honor, not all of the statements at issue can be characterized in that manner. There are several statements that do not fall in that description and that are not promises directly at variance with the asset purchase agreement within the meaning of the promissory fraud bar. There are statements which the Continental Airlines case makes clear, statements of ability, statements of strategy, statements that you could do something, that Titan could do something as opposed to Titan would. Titan would. That may arguably be, as Your Honor suggested, more in the nature of promissory fraud barred by 1856 of the California Code of Civil Procedure. However, the cases are clear, including the Duncan case most recently cited last week in Titan's 28J letter reaffirming the Continental Airlines distinction. And Continental Airlines was crystal clear in holding that statement of could or ability, specifically in that case the statement that, quote, the fuselage is, or the landing gear is, quote, designed, is designed to break away from the wing structure without rupturing, end quote. That that is not barred, unlike statements elsewhere in that case that the landing gear, quote, will not rupture, end quote. Will not rupture. To be fair, it's a lot easier for an old Idaho lawyer and judge to apply this fraud concept for parole evidence than it is any of these other concepts. Because in California, you let it all in to see if there's a problem. And it doesn't seem to me that that eviscerates the parole evidence altogether. But in this particular matter, we're really looking at, and this is where the general parole evidence is pretty helpful, we're looking if any of what you're suggesting is at variance with the promises in the writing, we don't let it in. If it's directly at variance. Well, I understand directly, but I'm trying to figure out what argument you make that isn't at variance. I would respectfully commend to your honors and the court's attention just two or three examples of statements to make the point clear, if I may. Statements, for example, at ER 110 and 105 to 114 in Ms. Partridge's declaration. Statements of Titan's ability to, and Titan could, stay in Grothmo throughout the earn-out period. And could produce 160, as opposed to would or will or promises to realize 160 million or more in DWP. And also specifically the factual, the independent factual representation that Titan could attain a 70% conversion rate of Eastwood business to Titan and Victoria business that would count for the earn-out clause, which you will find your honor at RER 15, RER 11 to 19, SER 20, the deposition of Ms. Partridge. And also I would draw your attention to SER 46, a rather telling email from Mr. Gifford, Titan's principal negotiator, to Mr. Ginaski and Ms. Partridge on those points. But the 70% conversion rate, I think that makes the point very clear. It's just like in continental airlines. The landing gear is designed to or could break away from the wing structure without rupturing. That's different than a statement that I promise you that the landing gear will not rupture or I promise you that it would not rupture. And those statements are admissible under well-established California's unique plural evidence rule that this court unanimously referred to in the Trident Center decision where, as your honor very aptly explained earlier, you have to let everything in and take a look. And I believe the chief judge of this court may have been speaking somewhat tongue-in-cheek when he noted at the outset of his opinion for the court that there is nothing that can be proof to the plural evidence rule in California in commending the rule to the California Supreme Court's attention, an invitation the high court has yet to take. And on the fraud exception, specifically the Duncan case, continental airlines, a long line of cases that Titan has no answer to and no response to. They are conflating statements of would or will with statements of could or had the ability or even the existence of a strategy to do something is in California an independent representation of facts used to induce one party to enter into a contract with another and is admissible under 1856 of our Code of Civil Procedure. I would draw your honor's attention finally not to burden your honor with too many citations to the California... Frankly, the situation you've suggested thus far, and I've been able to understand, I think I have well in mind. So I'm just trying to listen to see if you give me something I haven't looked at before. I would very quickly note my time is drawing down at minute 45. I do want to save some time for rebuttal. I do so, counsel. I would just give you a citation, though. I wouldn't leave it on a citation. I'd take my time and sit down unless you think that this one's going to really change my mind. OCM versus CIBC, 157 Cala, 4th, 835 on strategy. A square holding, your honor. Thank you. I'd love to reserve my time. Very well, counsel. Good morning, your honors. May it please the Court. My name is Peter Davids. I represent Appellee's Titan Auto Insurance of New Mexico et al. I'll first discuss the breach of contract claim, then I'll move on to the fraud claim. It seems the entire premise of Eastwood's argument on a contract claim is that a term, a commercially reasonable efforts term required Titan to act in a commercially unreasonable manner. Now, just a minute. If, in fact, industry standards suggest that the strategy that should or was contracted to be taken here was the strategy which would be done, I guess aren't we really saying it is a question of fact as to how long you undertake the strategy or whether you can change the strategy in the middle of the contract? How do I say as a question of law not for the jury to decide that this is out of the bounds when you've got, as counsel suggested, untold evidence in the record to the contrary? A couple of points, your honor. First of all, on a jury point, there won't be a jury in this case. Well, it doesn't matter. The judge has got to listen to all the evidence. But he did listen to all the evidence, your honor. On summary judgment, he reviewed. So you're in California. The law is on summary judgment. I'm still to suggest he doesn't have to listen to the witnesses? The court's decision, it was based on all the papers before him, and Eastwood stated at the summary judgment hearing that it had now presented all its evidence. The court's decision doesn't rely on any credibility determinations. The court says commercially reasonable efforts in effect means good faith exercise of business judgment to reach a goal. But hasn't the other side placed into contention whether that's a finding of a genuine issue of material fact? I don't believe so, your honor. I'll point to some of the issues. Your honor, you mentioned this evidence regarding industry standards. What Eastwood points to is a Berkshire Hathaway report by Warren Buffett. Nowhere in that report does he say that an insurance company, let alone Titan Insurance, can survive losses of tens of millions of dollars. They also point to an expert report of Stan Currie. All Mr. Currie said was Titan experienced these high TCSRs, which are trade combined ratios, in 2006. And so why couldn't they have continued to experience them? Well, I guess they couldn't have continued because in SEMPRA Energy versus California Department of Water Resources, it says speaking for California, profitability is only one factor in considering commercial reasonableness. So if profitability is only one factor, and industry standards would suggest that this strategy that was undertaken when the contract began was certainly something that the industry can do, then I'm having a tough time, again, understanding why I shouldn't look at old Gifford versus J&A Holdings, which suggests commercial reasonableness primarily involves questions of fact. Because in those cases, your honor, it didn't involve the massive losses that Titan was facing here. Well, that would be very easy for you then to put all the witnesses on and let the judge, after hearing everybody and being able to determine if they were, in fact, credible, see if you believe them or not. But the evidence in the record is undisputed. At ER 201-202, it was not disputed at the district court that Titan was facing TCRs of 122%. That meant its expenses and its losses were 22% higher than the premiums it was bringing in. It was losing a lot of money, tens of millions of dollars. But if that's only one factor, why is summary judgment appropriate here? Isn't this a very fact-intensive case? I don't believe so, your honor. The issue is what is it to act in a commercially reasonable manner? And that is to act in a good-faith exercise of business judgment. There's no suggestion here that Titan did not act in good faith. As the district court found, all its actions were to respond to these massive losses. But there's obviously a differing interpretation of what commercial reasonableness is. As you heard Mr. Poon's argument, and part of it has to do with the time frame within which you measure losses. If you look at it over a longer period of time, it means one thing. If you look at it on a narrow basis, it means something else. But where is the evidence in the record that Titan could have endured tens of millions of dollars in losses over this period? It just doesn't exist. Mr. Corey says, well, companies sometimes operate at above 100% TCR. He also points to Titan's rates in 2006, but those were on a much smaller volume of business. I'd like to point the court to a document in the record, ER 379 to 381. And that shows in the year before, in 2006, the year before the acquisition of Eastwood's assets, Titan lost $1.2 million. In 2007, the year of the Eastwood purchase, Titan lost $25 million. Its losses went from $1.2 million to $25 million. Eastwood points to the concept of float, where insurance companies can sometimes make money by investing premiums. But if one looks at that document, there is a line item for investment income, and it's very small. And at this time, the country was entering a recession. So for Eastwood to prevail, a reasonable finder of fact would have to believe that Titan, in this agreement, bound itself to incur losses of up to $35 million in order to pay Eastwood another $5 million in earn out. And that just doesn't make any sense. In that case, it would have made more sense for Titan simply to pay Eastwood the entire purchase price up front and not to have an earn out provision. Now, if there were such a provision in the contract, clearly, or if there were such a commitment, clearly it would be spelled out in the agreement. And it's important to note that Eastwood and its attorneys at Gibson, Dun & Crutcher, specifically requested language that would have required that Titan maintain, this is a quote, maintain competitive underwriting and pricing standards. But Titan rejected this language and would not sign an agreement containing such a term. In exchange for removing that language, which limited Titan's discretion on pricing and underwriting, Titan agreed to pay Eastwood another $1 million up front and to make the earn out schedule much more favorable. Now, Eastwood accepted that, those changes. And that's especially supplemental excerpts of record 176 to 177 and 189 to 192. The problem I have, I guess, I mean, I can understand your argument and I can understand being a trier of fact and hearing what your witnesses say and going through the argument. But we're not there. We're on summary judgment. We're on summary judgment where I'm supposed to give every intent of fact to the opposition. And giving every intent of fact to the opposition, I'm supposed to suggest that there can be no standard in California that a growth mode strategy that is adopted here was commercially reasonable. I'm supposed to say that given them every intent of the doubt. No, Your Honor, you're supposed to say it's not commercially reasonable to sit back and incur these kinds of losses. There's no evidence in the record that any company, any insurance company sits back, that this phrase commercially reasonable is known to business people. And by the way, this term is used throughout the agreement. It's not just in this. Well, I understand. That's why I'm worried that it's a question of fact. The judge ought to see what the evidence is before he makes that determination. I think, Judge, the district court was absolutely correct that this leads to a commercial absurdity. No one would agree to such a term. No business person would say, I'll agree to incur these kinds of losses in order to pay you $5 million more. Of course, Titan wanted to grow and planned on growing, but it had no way of knowing it was going to lose this kind of money. I think I am going to move on to the fraud claim, if Your Honor has no further questions. Now, this whole distinction Eastwood raises between could and would doesn't make any sense. The alleged representations here were that Titan was in growth mode and would remain in growth mode and would reach the highest earn out threshold. Now, this was a completely integrated agreement. So under the Pendergrass rule, these statements are barred. They're statements of future events. To say the only purpose of this was to give, if these statements occurred, were to give assurances to Eastwood that the highest earn out levels would be achieved. Also, what do you do with the Continental Airlines case? The Continental Airlines case, I'm glad you brought that up, Your Honor. It wasn't a matter of is designed. It was a matter of the Continental represented, or the party in that case, represented that there had been a design effort. And the court found there had been no design effort at all. Here, this was a statement of past fact. It wasn't a statement of current situation. Under the logic put forth by Eastwood, they say, well, this is a current statement, in fact, because it has to do with your current business strategy. Under that logic, any promise could be recharacterized as a statement about the promise or its current intent. And that just doesn't make any sense. It's clear here that if the statements are about actions in the past or about facts, was there a design team put together? Was there a design effort? Yes or no. But they are pointing to things like projections. That Titan projected, or there's evidence that the owner of Eastwood said, well, they told me they could convert 70%. Well, clearly, that's a projection. How is that a statement? How is that a representation of current fact? And Eastwood also points to the idea that they point to could. Well, of course, Titan could. The whole point of Eastwood's contract claim is that Titan not only could, but should have continued in the same strategy and sold $160 million in direct written premium. So there's no dispute. I'm sorry, my mouth is getting dry. There's no dispute. It must be a bad place. Everybody needs to go get water. Get it. Stop the clock. Let him have the water at least. There's no dispute that Titan could have. The question is, was it commercially reasonable to do so and lose that kind of money? So the whole point of the rule under Pendergrass is to prevent parties from making an end run around the parole evidence rule by recasting contract claims as fraud claims, and that's exactly what Eastwood is trying to do here. It's trying to take these promises barred by the parole evidence rule and say these are representations that we relied on. So I think it's – Well, we've heard particularly from Judge Smith about how loosey-goosey, and of course our chief judge himself, how loosey-goosey the parole evidence rule is in the state of California. But not with regard to fraud claims, Your Honor. The Pendergrass rule, which was decided in 1935, I believe, to be reaffirmed by Casa Herrera, and the exceptions to it are very narrow, and they don't – all of the representations here, and I'll point the court to the complaint, the representations that Titan could and would achieve these burnout thresholds. The whole point of this is that this was a supposed assurance that Titan would, in fact, reach these. These are statements of future events. They're clearly in the nature of promises. I'm just going to go back. I would note back to the earlier – going back to the contract claim just briefly. You know, even a best – in the way – I think the proper way to interpret a commercially reasonable efforts clause, as I mentioned, it's a good faith business effort to reach a certain goal. Not even a best efforts clause requires every conceivable effort. So the position that Titan could have done a few more things or a few less things doesn't make sense. One looks at the whole – at its efforts at the time to respond to its spiraling losses. One doesn't sit back in hindsight – the cases are clear on that – and look back and say, well, now, gee, I would have done something differently after the fact. And I would note, Judge Smith, that the California cases you point to are very different situations. They deal with sale of collateral, and they don't define commercially reasonable, but they just say, well, if you act – or another one of the cases deals with consent to sublease. Another one – the Semper case is unpublished, and it doesn't give facts as to what the situation was. But none of those cases involve the kind of losses at issue here, which I think on their face are commercially unreasonable. No business person would agree in advance to incur these kinds of losses, and no business person would expect that a commercially reasonable clause could be interpreted in this way. All right. Thank you, Counselor. Your time has expired. Thank you. Mr. Poon, you have a little reserve time. Thank you, Your Honor. Let me begin with Counsel's assertion, repeated assertion of, quote, tens of millions of dollars of losses. There is no support in the record for that assertion whatsoever or for the district court's characterization of massive losses. It's never – no citation of evidence is provided in the district court. No citation in their brief. The closest they can – and as we argued in the court below, an underwriting loss is a very different thing than a real, actual money loss. It's just an accounting metric used by insurance companies in those industries. Also, the very obvious point, context, Your Honors. We're dealing with a multibillion-dollar conglomerate, nationwide mutual insurance company. Tens of millions of dollars of losses, even if that were true, which there's no support for and is disputed, may not mean a whole lot to them in terms of a longer-range strategy given the timeframe, as Your Honor alluded to earlier. So there's no basis for that whatsoever. Also, the assertion that all of this evidence was supposedly submitted on summary judgment, that also is not true. If you look at the statement in context, all trial counsel was referring to was that we submitted all the evidence in response to what the district court admitted was a very unusual procedural posture, ordering to show cause by summary judgment should be granted on a motion for summary judgment that Titan hadn't even brought. And all he was saying was we've brought enough evidence to show that there's tribal issues of fact as to that. On the fraud claim, which I think it feeds into, as Your Honor pointed out to you before, this is rife with credibility determinations. What exactly growth mode meant, you would have to examine the very conflicting testimony of Ms. Partridge and Mr. Gifford, the principal negotiators to this deal. I would ask Your Honors just to compare it. There is no other site, just RER 13 and 19 with RER 66 to 68, where Mr. Gifford and Ms. Partridge provide very different accounts of what exactly Mr. Gifford meant when he said growth mode could stay in growth mode, would stay, could, and had the ability to stay in growth mode, which is very different than would. Thank you, counsel. Your time has expired. Thank you, Your Honors. The case just argued will be submitted for decision, and the Court will adjourn. Thank you for arguing. Very good. Thank you both, Your Honor. The Court is adjourned. Thank you.
judges: Nelson, O'scannlain, Smith